**E-FILED**
Monday, 07 February, 2005  09:21:19 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DAVID STROHMAIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  04-1106 |
| | ) | |
| RAY DENNISON CHEVROLET, Inc., | ) | Judge Gorman |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

**MOTION FOR PARTIAL SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON COUNT II OF PLAINTIFF'S COMPLAINT**

Plaintiff moves for summary judgment on Count II (Fair Credit Reporting Act) of his

Complaint.  In support of his motion, Plaintiff states as follows:

*A.  Introduction*

1.  Count II of Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act,

15 U.S.C. §1681 et seq.

2.  Plaintiff is entitled to a finding of liability under FCRA because there are no disputed

material facts.  Plaintiff also seeks injunctive relief under the authority of Califano v. Yamasaki,

442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal

courts retain their equitable power to issue injunctions in suits over which they have

jurisdiction") and Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (recognizing

that injunctive relief is available to an FCRA plaintiff).

*B.  Material Facts Claimed to be Undisputed*

3.  To prevail in a Section 1681m action, Plaintiff must establish only three elements:

- Adverse action (broadly defined by FCRA as "an action taken or determination that is that is adverse to the interests of the consumer," Section 1681a(k)(1)(B)(iv)(II));

- Based in whole or in part on any information contained in a consumer's credit report; and,

- Failure to provide Section 1681m notices.

4. Each of these elements is undisputed.

5. **Element One.**  The undisputed nature of element one ("adverse action") is demonstrated by Ray Dennison's own Rule 26 disclosures:

> the defendant's representatives asked the plaintiff how bad the plaintiff's credit was and asked if he wanted them to see if it appeared that he could get a loan, *** the defendant's representatives pulled the plaintiff's credit report, and, after reviewing the plaintiff's credit report with the plaintiff, the plaintiff and the defendant's representatives all agreed that it would be best to put the loan in the father's name because even if the father co-signed for the plaintiff, the interest rate on the loan would be higher because the plaintiff had two profit and loss write offs and a low credit score.  Hence, the deal was made in the father's name alone.

Exhibit A, Defendant's Rule 26 disclosures.[1]  Additionally, Plaintiff's Second Requests to Admit, served upon Defendant on August 22, 2004, and which have been admitted by Defendant when it failed to respond to them within 30 days (or ever), also show that the "adverse action" element is undisputed.  See, e.g., Plaintiff's Second Requests to Admit, Nos. 7, 8, and 16:

> 7.  Ray Dennison Chevrolet decided not to proceed with the attempted sale to the Plaintiff based in whole or in part on the information contained in Plaintiff's credit report.

> 8.  Ray Dennison's decision not to proceed with the attempted sale to the Plaintiff in September of 2003 was made, in part, on the basis of information contained in Plaintiff's credit report.

> 16.  Ray Dennison' Chevrolet's decision not to proceed with Plaintiff's attempted purchase of a motor vehicle was made, in part, on the basis of information contained in Plaintiff's credit report.

---

[1] The admissibility of all exhibits is supported by a Declaration of Dmitry N. Feofanov, Exhibit G.

Exhibit B, Second Requests to Admit.[2]  The "adverse action" element is established

because the admitted requests reference Defendant's decision "not to proceed with the

attempted sale" of the truck.

6.  **Element Two.**  The second element (that the adverse action was based in part on the

information from Plaintiff's credit report) is established by Defendant's admissions on file.  See

Plaintiff's Second Requests to Admit (admitted by Defendant), Nos. 7, 8, and 16:

> 7.  Ray Dennison Chevrolet decided not to proceed with the attempted sale
> to the Plaintiff based in whole or in part on the information contained in Plaintiff's
> credit report.
>
> 8.  Ray Dennison's decision not to proceed with the attempted sale to the
> Plaintiff in September of 2003 was made, in part, on the basis of information
> contained in Plaintiff's credit report.
>
> 16.  Ray Dennison' Chevrolet's decision not to proceed with Plaintiff's
> attempted purchase of a motor vehicle was made, in part, on the basis of
> information contained in Plaintiff's credit report.

Exhibit B, Second Requests to Admit.  These requests establish the second element (adverse

action based in part on the information contained in a credit report).

7.  **Element Three.**  Finally, there is also no dispute that Ray Dennison, having accessed

Plaintiff's credit report (Complaint, ¶6, Exhibit C; Answer, ¶6, Exhibit D), did not provide Mr.

Strohmaier his Section 1681m disclosures.  See Plaintiff's First Requests to Admit, Nos. 23, 26,

and 27 and Defendant's Responses thereto:

> 23.  At no time in September of 2003, or after, did Ray Dennison Chevrolet
> provide Plaintiff with the name, address, and telephone number of the credit
> bureau that furnished Plaintiff's credit report to Ray Dennison Chevrolet.
>
> Response:  Admit.

---

[2] Plaintiff's Second Requests to Admit were served upon Defendant on August 21, 2004, at 11:32 p.m., by facsimile transmission (see Exhibit B, page one), and on August 22, 2004, by regular mail (see Exhibit B, Certificate of Service page).  To date, Plaintiff received no response to his Requests, and therefore, by operation of F.R.C.P. 36(a), Plaintiff's Second Requests to Admit stand admitted.

26.  At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a notice of his right to obtain a free copy of his credit report.

      Response:  Admit, but deny that under the circumstances that the plaintiff had any right to receive it under the ECOA [sic] and applicable case law.

27.  At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a notice of his right to dispute with a credit bureau the accuracy or completeness of any information in Plaintiff's credit report furnished by the credit bureau.

      Response:  Admit, but deny that under the circumstances that the plaintiff had any right to receive it under the ECOA [sic] and applicable case law.

Exhibit E (Requests to Admit); Exhibit F (Response to Requests to Admit).

### C.  *Argument*

8.  Section 1681m of FCRA provides, in pertinent parts:

**(a) Duties of users taking adverse actions on the basis of information contained in consumer reports**

If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall—

    (1) provide oral, written, or electronic notice of the adverse action to the consumer;

    (2) provide to the consumer orally, in writing, or electronically—

        (A) the name, address, and telephone number of the consumer reporting agency *** that furnished the report to the person;

        (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and

    (3) provide to the consumer an oral, written, or electronic notice of the consumer's right—

        (A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an

indication of the 60-day period under that section for obtaining
such a copy; and

(B) to dispute, under section 1681j of this title, with a consumer
reporting agency the accuracy or completeness of any
information in a consumer report furnished by the agency.

15 U.S.C. §1681m(a)(1) through (3).

9. The purpose of the Fair Credit Reporting Act is to protect consumers from

transmission of inaccurate information about them. <u>Guimond v. Trans Union Credit Information

Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995); <u>Ashby v. Farmers Group, Inc.</u>, 261 F.Supp.2d 1213,

1216 (D. Or. 2003). To accomplish this goal, Congress imposed a "limited responsibility"

(<u>Wiggins v. District Cablevision, Inc.</u>, 853 F.Supp. 484, 489 (D.D.C. 1994)) upon the users of

credit reports: all they have to do when they take an adverse action is to advise the consumer of

the name and address of the consumer reporting agency that provided the credit report. This is

done so that "to enable the subject of a consumer report to request disclosure from the reporting

agency of the nature and scope of the information in this file." <u>Fischl v. General Motors

Acceptance Corp.</u>, 708 F.2d 143, 149 (5th Cir. 1983).

10. As explained above, the only three elements a plaintiff must establish to obtain

summary judgment are:

- Adverse action (broadly defined by FCRA as "an action taken or determination that is
  that is adverse to the interests of the consumer," Section 1681a(k)(1)(B)(iv)(II));

- Based in whole or in part on any information contained in a consumer's credit report;
  and,

- Failure to provide Section 1681m notices.

15 U.S.C. §1681m(a)(1) through (3); <u>Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.</u>,

2004 WL 40631, at *5 (N.D. Ill. 2004).

11.  The FCRA defines an "adverse action" to include "an action taken or determination that is adverse to the interests of the consumer."  15 U.S.C. §1681a(k)(1)(B)(iv)(II).  Thus, "the FCRA defines 'adverse action' more broadly than does the ECOA."  <u>Treadway v. Gateway Chevrolet Oldsmobile, Inc.</u>, 362 F.3d 971, 982 (7th Cir. 2004).

12.  Merely refusing to send a consumer's application to a lender constitutes an adverse action.  <u>Treadway</u>, 362 F.3d at 983 (merely not sending consumer's application to a lender constitutes an "adverse action" under FCRA); asking for a co-signor is an adverse action.  <u>Payne</u>, 2004 WL 40631, at *6 (requiring an individual applicant to apply jointly is an adverse action).

13.  As demonstrated below, Ray Dennison took an adverse action against Mr. Strohmaier based on the information contained in his credit report when it decided not to proceed with an attempted sale of a motor vehicle to Mr. Strohmaier.  As further admitted by Ray Dannison in its Responses to Requests to Admit, it failed to provide Mr. Strohmaier with Section 1681m notices, as required by FCRA.  By failing to provide such notices, Ray Dennison violated the Act, and Plaintiff is entitled to summary judgment.

14.  **Element One.**  Ray Dennison, "a person," 1 U.S.C. §1, took an adverse action against Mr. Strohmaier when, in May of 2002, it refused to accept his application for credit.  As Ray Dennison's stated in its own Rule 26 disclosures:

> the defendant's representatives asked the plaintiff how bad the plaintiff's credit was and asked if he wanted them to see if it appeared that he could get a loan, ***
> the defendant's representatives pulled the plaintiff's credit report, and, after reviewing the plaintiff's credit report with the plaintiff, the plaintiff and the defendant's representatives all agreed that it would be best to put the loan in the father's name because even if the father co-signed for the plaintiff, the interest rate on the loan would be higher because the plaintiff had two profit and loss write offs and a low credit score.  Hence, the deal was made in the father's name alone.

Exhibit A, Defendant's Rule 26 disclosures.  Moreover, admissions on file reference Defendant's "decision not to proceed with the attempted sale to the Plaintiff in September of 2003," and

Defendant's "decision not to proceed with Plaintiff's attempted purchase of a motor vehicle"—clearly decisions or determinations adverse to the interests of Mr. Strohmaier.

15. <u>Payne</u>, a case cited with approval by the Seventh Circuit in <u>Treadway</u>, provides a useful comparison:

> The Paynes point to two instances that they contend constitute adverse actions against them.  First, the Paynes argue that Diepholz Ford took an adverse action against Paula Payne by refusing to submit her individual credit application to Household after sending her the direct mailing purporting to offer her credit. The Paynes also contend that Diepholz Ford took an adverse action against them by submitting their credit applications to Household, a "secondary lender" that requires extensive documentation from credit applicants, rather than a prime lender that would not have required the submission of a valid driver's license. In both instances, the Paynes contend that Diepholz Ford took these adverse action against them based on information obtained from their credit reports. Thus, the Paynes argue that Diepholz Ford violated <u>§ 1681m</u>. Both parties move for summary judgment on Count II.

> The FCRA defines an "adverse action" to include "a denial or revocation of credit ... or a refusal to grant credit in substantially the amount or on substantially the terms requested." <u>15 U.S.C. § 1691(d)(6)</u>. More broadly, an adverse action includes "any action taken or determination that is ... adverse to the interests of a consumer." <u>15 U.S.C. § 1681a(k)</u>. Diepholz Ford ***clearly*** took an adverse action against Paula Payne when it refused to submit her individual credit application to a lender as she requested and instead required her to apply for credit jointly with her husband**.**

<u>Payne</u>,  2004 WL 40631, at *6 (emphasis added; granting summary judgment).

16.  The circumstances are thus analogous; Ray Dennison took an adverse action against Mr. Strohmaier.  The Court in <u>Payne</u> thought that refusing to submit an application to a bank and requiring a co-signer established an adverse action "clearly."  <u>Payne</u>, 2004 WL 40631, at *6 ("Diepholz Ford clearly took an adverse action against Paula Payne when it refused to submit her individual credit application to a lender as she requested and instead required her to apply for credit jointly with her husband.").  It is respectfully submitted that the adverse action in the instant case is equally clear, given the broad definition of "adverse action" (as an action adverse to the interests of the consumer) established by the Act.

17.  **Element Two.**  There is also no dispute that this adverse action was based on information contained in Mr. Strohmaier's credit report.  See, e.g., Plaintiff's Second Requests to Admit (admitted by Defendant), Nos. 7, 8, and 16:

> 7.  Ray Dennison Chevrolet decided not to proceed with the attempted sale to the Plaintiff based in whole or in part on the information contained in Plaintiff's credit report.
>
> 8.  Ray Dennison's decision not to proceed with the attempted sale to the Plaintiff in September of 2003 was made, in part, on the basis of information contained in Plaintiff's credit report.
>
> 16.  Ray Dennison' Chevrolet's decision not to proceed with Plaintiff's attempted purchase of a motor vehicle was made, in part, on the basis of information contained in Plaintiff's credit report.

Exhibit B, Second Requests to Admit.  These requests unequivocally establish both the "adverse action" element (Defendant's decision "not to proceed with the attempted sale" of the truck) and the second element (adverse action based in part on the information contained in a credit report). (See also Exhibit A, which states that the transaction was structured in Plaintiff's father's name because Plaintiff's credit report showed "two profit and loss write offs and low credit score.")

18.  **Element Three.**  Finally, there is also no dispute that Ray Dennison, having accessed Plaintiff's credit report (Complaint, ¶6, Exhibit C; Answer, ¶6, Exhibit D), did not provide Mr. Strohmaier his Section 1681m disclosures.  See Plaintiff's First Requests to Admit, Nos. 23, 26, and 27 and Responses thereto:

> 23.  At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with the name, address, and telephone number of the credit bureau that furnished Plaintiff's credit report to Ray Dennison Chevrolet.
>
> Response:   Admit.
>
> 26.  At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a notice of his right to obtain a free copy of his credit report.

Response:  Admit, but deny that under the circumstances that the plaintiff had any right to receive it under the ECOA [sic] and applicable case law.

27.  At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a notice of his right to dispute with a credit bureau the accuracy or completeness of any information in Plaintiff's credit report furnished by the credit bureau.

Response:  Admit, but deny that under the circumstances that the plaintiff had any right to receive it under the ECOA [sic] and applicable case law.

Exhibit E (Requests to Admit); Exhibit F (Response to Requests to Admit).

19.  This is all Plaintiff has to prove to prevail on summary judgment under Section 1681m.  Payne, 2004 WL 40631, at *5-6.

**WHEREFORE**, Plaintiff requests that the Court:

A,  Declare the practice of Defendant illegal and enjoin it from further violations of the Act, under the authority of Califano v. Yamasaki, 442 U.S. 682, 705 (1979) and Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (recognizing that injunctive relief is available to an FCRA plaintiff);

B.  Grant Plaintiff partial summary judgment (liability only) on Count II of his Complaint;

C.  Set this matter for trial on damages;

D.  Grant Plaintiff other relief the Court deems appropriate and just.

**DAVID STROHMAIER**

s/ Dmitry Feofanov
Bar Number:  6224899
Attorney for Plaintiff
ChicagoLemonLaw.com
1639 Brandywine Lane
Dixon, Illinois  61021
Telephone:  815/288-3217
Facsimile:  815/288-3235
Email:  Feofanov@ChicagoLemonLaw.com

**Certificate of Service**

I hereby certify that on February 7, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

None,

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Mr. Gerald L. Hall
524 Court Street
Pekin, IL  61554

s/ Dmitry Feofanov
Bar Number:  6224899
Attorney for Plaintiff
CHICAGOLEMONLAW.COM
1639 Brandywine Lane
Dixon, Illinois  61021
Telephone:  815/288-3217
Facsimile:  815/288-3235
Email:  Feofanov@ChicagoLemonLaw.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

PEORIA DIVISION

| | | |
|---|---|---|
| DAVID STROHMAIER, | ) | |
| PLAINTIFF | ) ) | |
| VERSUS | ) ) | 04-1106 |
| RAY DENNISON CHEVROLET, INC., | ) ) | |
| DEFENDANT | ) ) | |

## DEFENDANT'S RULE 26 DISCLOSURES

NOW COMES Ray Dennison Chevrolet, Inc., the defendant, by Gerald L. Hall, its

attorney, and for the defendant's Rule 26 Disclosures, he states as follows, to wit:

INITIAL DISCLOSURES...

26(a)(1)(A) The name, and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information:

ANSWER: Al Ozuna and Dave Metzger, both at 2320 North Eighth Street, Pekin, Illinois  61554, telephone 309-347-1113—both individuals dealt with the plaintiff's father and spoke with him and the plaintiff, and both will testify as to the conversation amongst themselves and the plaintiff's father and the plaintiff.

Ex. A

with the plaintiff's social security number written on the copy paper, and the plaintiff's credit report.


OTHER DISCLOSURES...


Further supplementing the defendant's pretrial disclosures, the defendant may call all seven of the individual listed above and use the documentary information listed above to show that the plaintiff arrived at the defendant's business on September 8, 2003, told the defendant's representatives that his father came in to buy him a truck because his credit was bad, the defendant's representatives asked the plaintiff how bad the plaintiff's credit was and asked if he wanted them to see if it could get a loan, the plaintiff agreed to the pulling of his credit report for that purpose, the defendant's representatives pulled the plaintiff's credit report, and, after reviewing the plaintiff's credit report with the plaintiff, the plaintiff and the defendant's representatives all agreed that it would be best to put the loan in the father's name because even if the father co-signed for the plaintiff, the interest rate on the loan would be higher because the plaintiff had two profit and loss write offs and a low credit score. Hence, the deal was made in the father's name alone.


Respectfully submitted,

Gerald L. Hall, Esq.


GERALD L. HALL, ESQ.
ATTORNEY FOR THE DEFENDANT

524 COURT STREET
PEKIN, ILLINOIS 61554

309-347-1113

# Dmitry N. Feofanov

# ChicagoLemonLaw.com

| FACSIMILE COVER PAGE | |
|---|---|
| To: Gerald Hall | From: Dmitry Feofanov |
| Fax #: 1-309-347-1112 | Fax #: (815) 288-3235 |
| Company: | Tel #: (815) 288-3217 |

| Subject: , | |
|---|---|
| Sent: 8/21/2004 at 11:32:48 PM | Pages: 8 (including cover) |

**MESSAGE:**

*Ex. B*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DAVID STROHMAIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1106 |
| | ) | |
| RAY DENNISON CHEVROLET, Inc., | ) | |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

## SECOND REQUESTS TO ADMIT
## TO DEFENDANT RAY DENNISON CHEVROLET

To: See attached Service List

Plaintiff requests that Ray Dennison Chevrolet admit the truth of the following facts within

30 days:

1. If, in September of 2003 Ray Dennison Chevrolet entered into a finance contract with

Plaintiff, it would have expected to assign Plaintiff's finance contract to a bank or a finance

company.

2. If, in September of 2003, Ray Dennison Chevrolet entered into a finance contract with

Plaintiff, it would have expected to earn the spread between the interest rate in the Plaintiff's finance

contract, and the "buy-rate" at which the bank or the finance company would have taken the

assignment of Plaintiff's finance contract.

3. Ray Dennison Chevrolet regularly sells motor vehicles "for the deferred payment price."

4, Ray Dennison Chevrolet regularly sells motor vehicles "for the deferred payment price,"

as stated in all retail installment contracts it uses.

1

2

5. The principal reason why Ray Dennison Chevrolet would not consider Plaintiff for a financed purchase of a motor vehicle was because Plaintiff had a derogatory item or items in his credit report.

6. The actual reason why Ray Dennison Chevrolet would not consider Plaintiff for a financed purchase of a motor vehicle was because Plaintiff had a derogatory item or items in his credit report.

7. Ray Dennison Chevrolet decided not to proceed with the attempted sale to the Plaintiff based in whole or in part on the information contained in Plaintiff's credit report.

8. Ray Dennison's decision not to proceed with the attempted sale to the Plaintiff in September of 2003 was made, in part, on the basis of information contained in Plaintiff's credit report.

9. Ray Dennison's decision not to proceed with the attempted sale to the Plaintiff in September of 2003 was *not* made, in part, on the basis of information contained in Plaintiff's credit report.

10. At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a statement that the credit bureau did not make the decision to not proceed with the motor vehicle purchase transaction.

11. In September of 2003, Ray Dennison Chevrolet *did* provide Plaintiff with a statement that the credit bureau did not make the decision to not proceed with the motor vehicle purchase transaction.

3

4

12. At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a statement that the credit bureau was unable to provide Plaintiff with specific reasons why Ray Dennison Chevrolet could not proceed with the attempted purchase of a motor vehicle.

13. In September of 2003, Ray Dennison *did* provide Plaintiff with a statement that the credit bureau was unable to provide Plaintiff with specific reasons why Ray Dennison Chevrolet could not proceed with the attempted purchase of a motor vehicle.

14. At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a notice of his right to obtain a free copy of his credit report.

15. In September of 2003, Ray Dennison *did* provide Plaintiff with a notice of his right to obtain a free copy of his credit report.

16. Ray Dennison Chevrolet's decision not to proceed with Plaintiff's attempted purchase of a motor vehicle was made, in part, on the basis of information contained in Plaintiff's credit report.

17. Ray Dennison Chevrolet's decision to not to proceed with Plaintiff's attempted purchase of a motor vehicle in September of 2003 was *not* made, in part, on the basis of information contained in Plaintiff's credit report.

18. Before Ray Dennison Chevrolet does anything with respect to its customers' financing, it pulls credit reports of its customers.

19. In September of 2003, Ray Dennison Chevrolet used Plaintiff's credit report to determine to which financing company it would have submitted Plaintiff's credit application for financing, had Plaintiff filled out a credit application.

20. In September of 2003, Ray Dennison Chevrolet used Plaintiff's credit report to determine whether to ask Plaintiff to fill out a credit application.

4

5

## PROOF OF SERVICE

I, Dmitry Feofanov, certify that I served a copy of the above-referenced Interrogatories, Requests to Produce, and Requests to Admit, to counsel for Ray Dennison Chevrolet by facsimile transmission to 1-309-347-1112 (8 pages, confirmation copy) and by enclosing the above-referenced document(s) in an envelope plainly addressed to such person(s) at the address(es) listed above, by sealing the envelope containing the above-described document(s), and affixing to the envelope the proper amount of U.S. postage for regular mail, and then by depositing the envelope with its contents in the United States mail at the United States Post Office in Dixon, Illinois, at or before the hour of 5:00 p.m. on or before August 22, 2004.

Dmitry Feofanov

## CERTIFICATION

Under penalties of perjury, I certify that the statements set forth in the foregoing Proof of Service are true and correct.

Dmitry Feofanov

## SERVICE LIST

1.    Gerald L. Hall, Esq.
      524 Court Street
      Pekin, IL  61554

2.    Original to File

7

## Send Confirmation (Event Succeeded)

| | | | |
|---|---|---|---|
| Date: | 8/21/2004 | Time: | 11:32 PM |
| Pages: | 8 | Duration: | 1 min 39 sec |
| Recipient: | Gerald Hall | Company: | |
| Fax Number: | 1-309-347-1112 | Subject: | . |
| Type: | Fax | Pages Sent: | 8 |
| Remote CSID: | 309 347 1112 | Resolution: | Standard |
| Retries: | 0 | Speed: | 14400 bps |
| Status: | Completed | Status Code: | Complete |
| Keywords: | | ECM: | Off |





FILED

APR - 7 2004

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID STROHMAIER, | ) | |
| Plaintiff, | ) | |
| v. | ) | No.   04-1106 |
| RAY DANNISON CHEVROLET, Inc., | ) | |
| Defendant. | ) | JURY DEMANDED |

## COMPLAINT

**NOW COMES** Plaintiff, David Strohmaier, by and through his attorneys, and, as and for Complaint, states as follows:

### I. INTRODUCTION

1. This is an action for actual and statutory damages for violations of the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq., and Fair Credit Reporting Act, 15 U.S.C., §1681 et seq.

### II. JURISDICTION AND VENUE

2. Jurisdiction arises under the Equal Credit Opportunity Act and Fair Credit Reporting Act. Defendant Ray Dennison Chevrolet, Inc., resides at 2320 North 8th Street, Pekin, Illinois, and therefore venue is appropriate in this district as contemplated by 28 U.S.C. §1391(b)(1).

### III. FACTS

3. On or about September 8, 2003, Mr. Strohmaier came to Ray Dennison to buy a car.

EX.C

4. Ray Dennison had Mr. Strohmaier give it all the information its regularly obtains and considers in valuating applications for the amount and type of credit requested, i.e., to buy a car.

5. Ray Dennison requested that Mr. Strohmaier gave it his social security number.

6. Ray Dennison accessed Mr. Strohmaier's credit report.

7. Ray Dennison obtained a copy of Mr. Strohmaier's credit report.

8. Based on the information contained in Mr. Strohmaier's completed credit application, Ray Dennison determined that Mr. Strohmaier would not be eligible for financing.

9. Based on this determination, Ray Dennison decided not to extend credit for Mr. Strohmaier, not to seek the assignment of any future credit contract, and did not forward his application to any financing institution that would have took the assignment of the credit contract.

10. It is a common practice for Ray Dennison not to proceed with a credit transaction for those that it determines to be ineligible for credit.

## IV. CAUSES OF ACTION

### Count I—Equal Credit Opportunity Act: Declaratory Judgment, Injunctive Relief, and Damages

11. Mr. Strohmaier re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

12. Section 1691(d)(2) of the Act states, in pertinent part:

Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from a creditor.

13. Regulation B, 12 C.F.R. 202.9(a)(1) states:

*When notification is required.* A creditor shall notify an applicant of action taken within:

2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

PEORIA DIVISION

**FILED**

JUN - 8 2004

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DAVID STROHMAIER,                  )
                                   )
PLAINTIFF                          )
                                   )
VERSUS                             )          04-1106
                                   )
RAY DENNISON CHEVROLET, INC.,      )
                                   )
DEFENDANT                          )

## ANSWER

NOW COMES Ray Dennison Chevrolet, Inc., the defendant, by Gerald L. Hall, its
attorney, and for answer to the plaintiff's COMPLAINT filed April 7, 2004, he states
as follows, to wit:

## INTRODUCTION

1. That he admits the allegations of paragraph #1.

## JURISDICTION AND VENUE

2. That he denies that the defendant resides at the address stated as set forth in
paragraph #2 (the defendant is a corporation and that is the defendant's business

EX, D

location), but otherwise admits the allegations of the said paragraph.

## FACTS

3. That he denies the allegations of paragraph #3.

4. That he denies the allegations of paragraph #4.

5. That he admits the allegations of paragraph #5.

6. That he admits the allegations of paragraph #6.

7. That he admits the allegations of paragraph #7.

8. That he denies the allegations of paragraph #8.

9. That he denies the allegations of paragraph #9.

10. That he denies the allegations of paragraph #10.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID STROHMAIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1106 |
| | ) | |
| RAY DENNISON CHEVROLET, Inc., | ) | |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

### INTERROGATORIES, REQUESTS
### TO PRODUCE, AND REQUESTS TO ADMIT
### TO DEFENDANT RAY DENNISON CHEVROLET

To: See attached Service List

**Instructions**

1. If you have an objection to a request or interrogatory, especially for "vagueness," "breadth," or "relevance," call us. We will try to limit the request or explain an ambiguity. The Rules require us to work out discovery problems.

2. If you do not understand a word or a sentence, please first consult Black's Law Dictionary, or, if not defined there, Webster's Collegiate Dictionary. If, after consulting Black's Law Dictionary or Webster's Collegiate Dictionary, you still do not understand a word or a sentence, call us. We will be happy to define it for you.

**Definitions and explanations**

1. Whenever respondent is asked to "identify" a person or persons, it is contemplated that

1

*Ex. E*

16. In 2002, Ray Dennison Chevrolet sold more than 150 cars for which financing was required.

17. Ray Dennison Chevrolet regularly arranges for the extension of credit.

18. Ray Dennison Chevrolet never sends any of its customers written notifications of adverse action, as mandated by Section 1691(d) of the Equal Credit Opportunity Act.

19. Ray Dennison Chevrolet intentionally never sends written notifications of adverse action, as mandated by Section 1691(d) of the Equal Credit Opportunity Act.

20. The principal reason why Ray Dennison Chevrolet would not consider Plaintiff's application for credit was because Plaintiff had a derogatory item or items in his credit report.

21. The actual reason why Ray Dennison Chevrolet would not consider Plaintiff's application for credit was because Plaintiff had a derogatory item or items in his credit report.

22. Ray Dennison Chevrolet decided not to proceed with the Transaction with Plaintiff based in whole or in part on the information contained in Plaintiff's credit report.

23. At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with the name, address, and telephone number of the credit bureau that furnished Plaintiff's credit report to Ray Dennison Chevrolet.

24. At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a statement that the credit bureau did not make the decision to not proceed with the car purchase transaction.

25. At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a statement that the credit bureau was unable to provide Plaintiff with specific reasons why Ray Dennison Chevrolet could not proceed with the Transaction.

12

26. At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a notice of his right to obtain a free copy of his credit report.

27. At no time in September of 2003, or after, did Ray Dennison Chevrolet provide Plaintiff with a notice of his right to dispute with a credit bureau the accuracy or completeness of any information in Plaintiff's credit report furnished by the credit bureau.

28. Ray Dennison Chevrolet's decision not to proceed with the Transaction in September of 2003 was made, in part, on the basis of information contained in Plaintiff's credit report,

29. Ray Dennison Chevrolet's decision to not to proceed with the Transaction in September of 2003 was *not* made, in part, on the basis of information contained in Plaintiff's credit report,

30. Ray Dennison Chevrolet uses retail installment contracts when automobile purchases are financed.

31. Ray Dennison Chevrolet attempts to help its customers to obtain financing on a regular basis.

32. Before Ray Dennison Chevrolet arranges financing, it pulls credit reports of its customers.

33. Before Ray Dennison Chevrolet attempted to arrange financing for Plaintiff, it pulled his credit report.

34. Ray Dennison Chevrolet uses the customer's credit report to determine to which financing company it will submit the customer's credit application for financing.

35. In September of 2003, Ray Dennison Chevrolet used Plaintiff's credit report to determine to which financing company it would submit Plaintiff's credit application for

13

47. Ray Dennison Chevrolet establishes the interest rate listed in retail installment contracts of its customers.

48. Ray Dennison Chevrolet would have established the interest rate in Plaintiff's retail installment contract, had the Transaction gone forward.

49. Ray Dennison Chevrolet never sends any of its customers' notices of adverse action under the Equal Credit Opportunity Act.

50. Ray Dennison Chevrolet does not believe it has an obligation to send notices of adverse action to its customers under the Equal Credit Opportunity Act.

51. Ray Dennison Chevrolet employs finance managers who specialize in dealing with "secondary lenders" or "sub-prime" financing companies.

52. Sub-prime financing companies require more documentation to approve financing.

53. When dealing with a sub-prime financing company, Ray Dennison Chevrolet attempts to obtain all documentation from its customers, which is required by sub-prime financing companies.

54. In September of 2003, Plaintiff spoke to a finance manager of Ray Dennison Chevrolet.

**DAVID STROHMAIER**

By: _____
One of his Attorneys

15

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF ILLINOIS

### PEORIA DIVISION

| | |
|---|---|
| DAVID STROHMAIER, | ) |
| | ) |
| PLAINTIFF | ) |
| | ) |
| VERSUS | )        04-1106 |
| | ) |
| RAY DENNISON CHEVROLET, INC., | ) |
| | ) |
| DEFENDANT | ) |

## DEFENDANT'S RESPONSE TO THE PLAINTIFF'S INTERROGATORIES, REQUESTS TO PRODUCE, AND REQUESTS TO ADMIT

NOW COMES Ray Dennison Chevrolet, Inc., the defendant, by Gerald L. Hall, its attorney, and for response to the plaintiff's interrogatories, requests to produce, and requests to admits, he states as follows, to wit:

INTERROGATORIES...

1. See Rule 26 disclosure.

2. See Rule 26 disclosure.

Ex, F

18. Admit that the defendant never sends any of its customers written notification of adverse action, but denies that such is required under the act and applicable case law

19. Admit that the defendant intentionally never sends written notification of adverse action, but denies that such is required under the act and applicable case law

20. Deny—the plaintiff never submitted a credit application

21. Deny—see #20

22. Deny—the plaintiff never sought the transaction, his father did

23. Admit

24. Deny—this assumes that the plaintiff was involved in a car purchase transaction, which he was not, his father was

25. Deny—see #24

26. Admit, but deny that under the circumstances that the plaintiff had any right to receive it under the ECOA and applicable case law

27. Admit, but deny that under the circumstances that the plaintiff had any right to dispute it under the ECOA and applicable case law

28. Deny—there was no transaction between the plaintiff and the defendant

29. Deny—see #28

30. Admit

31. Admit

32. Deny—the defendant does not arrange financing, it attempts to help the customer do so

33. Deny—the defendant did not attempt to arrange financing for the plaintiff

34. Admit

35. Deny—the plaintiff never submitted a credit application

Respectfully submitted,

Gerald L. Hall, Esq.

GERALD L. HALL, ESQ.
ATTORNEY FOR THE DEFENDANT

524 COURT STREET
PEKIN, ILLINOIS  61554

309-347-1113

## Declaration of Dmitry Feofanov

I, Dmitry Feofanov, under penalty of perjury, as provided for by the laws of the United States (28 U.S.C. §1746), declare that the following statements are true:

1. I am one of the attorneys for the Plaintiff in this action.

2. I submit this Declaration in support of Plaintiff's Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint.

3. Attached to Plaintiff's Motion are relevant portions of the following documents:

- as Exhibit A, a true and accurate copy of a Rule 26 Disclosures I received in this case from Defendant Ray Dennison;

- as Exhibit B, a true and accurate copy of Plaintiff's Second Requests to Admit, served upon Defendant on August 22, 2004;

- as Exhibit C, a true and accurate copy of Plaintiff's Complaint;

- as Exhibit D, a true and accurate copy of Defendant's Answer;

- as Exhibit E, a true and accurate copy of Plaintiff's First Requests to Admit; and,

- as Exhibit F, a true and accurate copy of Defendant's Response to First Requests to Admit I received in this case from Defendant Ray Dennison.

February 7, 2005

Ex. 6

11